**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| JOE WILLIAMS, *et al.*, | § | |
| | § | |
| Plaintiffs. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:23-cv-00386 |
| | § | |
| PENTAGON FEDERAL CREDIT UNION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is a Motion for Summary Judgment filed by Defendant Pentagon Federal Credit Union ("PenFed"). *See* Dkt. 30. Having reviewed the briefing, the record, and the applicable law, I recommend the motion be granted in part and denied in part.

## BACKGROUND

In 2017, Plaintiffs Joe Williams and Ida Farris obtained an auto loan from Suntide Federal Credit Union (the "Account") to purchase a Prius. Shortly thereafter, Plaintiffs voluntarily allowed Suntide to repossess the Prius because they could not make the loan payments. PenFed later acquired Suntide, and with it, the Account. It is undisputed that the Account is the only loan Plaintiffs have ever had with PenFed.

In January 2023, Plaintiffs requested a copy of their consumer credit report from Equifax Information Solutions, Inc. ("Equifax"), and discovered that the Account was reported twice on Williams's credit report and thrice on Farris's credit report. Plaintiffs submitted disputes to Equifax in August 2023 and October 2023, informing Equifax that the Account was incorrectly listed more than once. Plaintiffs allege that Equifax forwarded these disputes to PenFed. Plaintiffs further allege that PenFed failed to conduct a reasonable investigation and continued inaccurately reporting multiples of the Account.

Plaintiffs instituted this lawsuit on December 5, 2023, claiming that PenFed negligently and willfully violated § 1681s-2(b) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x.[1] *See* Dkt. 1. PenFed has moved for summary judgment on Plaintiffs' claims.

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit[,] and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Harville v. City of Houston*, 945 F.3d 870, 874 (5th Cir. 2019) (cleaned up).

"The moving party bears the initial burden of showing that there is no genuine issue for trial." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). "For a defendant, this means showing that the record cannot support a win for the plaintiff—either because the plaintiff has a failure of proof on an essential element of its claim or because the defendant has insurmountable proof on its affirmative defense to that claim." *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020). "If the defendant succeeds on that showing, the burden shifts to the plaintiff to demonstrate that there *is* a genuine issue of material fact and that the evidence favoring the plaintiff permits a jury verdict in the plaintiff's favor." *Id.*

"To satisfy its burden, the party opposing summary judgment is required to identify specific evidence in the record, and to articulate the precise manner in which that evidence supports their claim." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (cleaned up). "It is axiomatic that the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Davis v. Davis*, 826 F.3d 258, 264 (5th Cir. 2016) (quotation omitted).

---

[1] Plaintiffs also asserted claims against Equifax. On February 26, 2025, Plaintiffs and Equifax stipulated to dismissal with prejudice. *See* Dkt. 33.

2

**ANALYSIS**

Plaintiffs claim that PenFed willfully and negligently violated § 1681s-2(b). The only differences between these two alleged violations are the level of culpability (willful v. negligent) and the remedy. Demonstrating a willful violation would enable Plaintiffs to recover actual *and* punitive damages. *See* 15 U.S.C. § 1681n(a). For a negligent violation, however, Plaintiffs would be limited to recovering only actual damages, as punitive damages are unavailable for negligent noncompliance. *See id.* § 1681o(a). PenFed asserts that Plaintiffs have no evidence that PenFed violated the FCRA at all, but even if they did, Plaintiffs cannot prove any damages. I will address each argument in turn.

**A.    WHETHER PENFED VIOLATED THE FCRA**

The FCRA imposes certain duties upon furnishers of credit information, like PenFed, once they have been notified by a credit reporting agency, like Equifax, that a consumer has disputed information in the consumer's credit report. Specifically, upon receiving notice of a dispute, a furnisher of credit information must:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency . . . ;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>
>> (i) modify that item of information;
>>
>> (ii) delete that item of information; or

> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1). Plaintiffs allege that PenFed violated these duties because it: (1) "conducted a superficial investigation and verified and certified to Defendant Equifax that the [duplicate Account] information was 'accurate' and should remain unchanged on the Plaintiffs' consumer reports"; and (2) "did not correct or delete the inaccurate or erroneous information relating to the Duplicate Accounts but continued to furnish false and erroneous information to the Credit Reporting Agencies." Dkt 1 at 4–5. Plaintiffs allege that PenFed's violations were both willful and negligent.

### 1. *There Is No Evidence of a Willful Violation*

"[A] defendant commits a willful violation and is subject to punitive damages only if it engages in willful misrepresentations or concealments." *Cameron v. Greater New Orleans Fed. Credit Union*, 713 F. App'x 238, 240 (5th Cir. 2018) (quotation omitted). "To be found in willful noncompliance, a defendant must have 'knowingly and intentionally committed an act in conscious disregard for the rights of others.'" *Stevenson v. TRW Inc.*, 987 F.2d 288, 293 (5th Cir. 1993) (quoting *Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir. 1986)); *see also Sapia v. Regency Motors of Metairie, Inc.*, 276 F.3d 747, 753 (5th Cir. 2002) ("[A] defendant's course of conduct must exhibit a 'conscious disregard' for or entail 'deliberate and purposeful' actions taken against a plaintiff's rights." (quoting *Cousin v. TransUnion Corp.*, 246 F.3d 359, 372 (5th Cir. 2001))). "A failure to adequately investigate and swiftly correct inaccurate information generally does not constitute a willful violation." *Cameron*, 713 F. App'x at 240.

PenFed argues that "Plaintiffs cannot even prove that PenFed violated the FCRA, let alone that it did so knowingly and intentionally and in conscious disregard for their rights." Dkt. 30 at 21. In their eight-page response, Plaintiffs fail to address this argument. In fact, the only time the word "willful" appears in Plaintiffs' response is when Plaintiffs recount PenFed's argument that its "actions

were not a willful or negligent violation of the FCRA." Dkt. 31 at 1. But the word "willful" does not appear again in Plaintiffs' response. Nor do the words "knowingly," "intentionally," "conscious disregard," "deliberate," or "purposeful"—or any variation thereof—appear in Plaintiffs' response. There is simply nothing in Plaintiffs' response that can be construed as meaningful opposition to PenFed's argument that Plaintiffs cannot prove PenFed *willfully* violated the FCRA. Because Plaintiffs have not defended their willful violation claim in their summary judgment response, they have waived that claim. *See Indigenous Peoples of Coastal Bend v. U.S. Army Corps of Eng'rs*, 132 F.4th 872, 882–83 (5th Cir. 2025) ("[W]aiver occurs when the party fails to pursue a claim beyond the complaint, including by ignoring the claim in its motion for summary judgment or not defending it in response to a dispositive motion.").

Even if Plaintiffs did not waive their willful violation claim, there is no evidence in the record to support such a claim. Accordingly, PenFed is entitled to summary judgment on Plaintiffs' claim that PenFed willfully violated § 1681s-2(b).

### 2. *There Is Some Evidence of a Negligent Violation*

PenFed argues that—despite the Account indisputably being listed incorrectly on Plaintiffs' credit reports multiple times, even after Plaintiffs submitted multiple disputes—Plaintiffs cannot establish even a negligent violation of the FCRA because "unrebutted evidence proves PenFed did not report the loan as more than one account." Dkt. 30 at 15. The "unrebutted evidence" in question is the deposition testimony of PenFed's corporate representative, Bruno Buccolo:

> Q. Right. What did PenFed do to investigate to see if this was a duplicate account or not?
>
> A. Through our investigation, we review our system of records and validate that we only have one account in our system of records for this loan, and we furnish one account to the credit reporting agencies. So that's the validation.
>
> Q. So did PenFed validate that it was a duplicate account or a single account?
>
> A. It's a single account.

> Q. So what information did they sent [sic] back to Equifax to say that it was a single account?
>
> A. The response to that—this loan is that this information is accurate.
>
> Q. Well, I'm trying to understand that because it says under the FCR relevant information account is duplicate and just one belongs to me. And it says information is accurate as of last submission so no changes.
>
> A. Right.
>
> Q. So did you verify that it was one account that was accurate or a duplicate account that was accurate.
>
> A. We verified that we only have one account with this member, as we previously addressed in all the statements that we saw and that we furnished one account to the credit reporting agencies. So as of our last submission, we validated that our submission was accurate with one account.

Dkt. 30 at 15 (quoting Dkt. 30-6 at 4–5). PenFed argues that this testimony—coupled with the fact that other credit reporting agencies did *not* list the Account multiple times—proves that PenFed did not report the Account multiple times. *See* Dkt. 30 at 16 ("If the duplicate reporting originated in PenFed's system of records, it likely would not have been limited to credit reports issued by Equifax."). This is the only evidence PenFed offers in support of its summary judgment motion.

PenFed seems to forget that the court is required to construe all evidence *in Plaintiffs' favor*. *See Davis*, 826 F.3d at 264. Accordingly, I cannot infer that the lack of duplicate reporting from other credit reporting agencies means that PenFed is the not the source of the error. There are countless reasons why other credit reporting agencies may not have duplicated the Account,[2] and I cannot discount those reasons and draw an inference that would favor PenFed over Plaintiffs. Nor can I bend over backwards to interpret Buccolo's confusing deposition testimony in PenFed's favor. For example, Buccolo testified that PenFed told Equifax that its loan information "is accurate." Dkt. 30 at 15. But Equifax listed the Account twice,

---

[2] As but one example, it could be that PenFed reported the Account multiple times, but that TransUnion and Experian, unlike Equifax, listed the Account only once because the account number was the same for both entries.

which is categorically *not* accurate. I am required to infer from Buccolo's testimony that when PenFed told Equifax its information was "accurate," that PenFed was verifying duplicate account listings. *Id.* Moreover, Buccolo's testimony that PenFed told Equifax "we only have one account with this member" or that PenFed "furnished one account to the credit reporting agencies" does not prove that PenFed did not list that one Account twice. *Id.*

PenFed could have easily provided a clear and unambiguous declaration or, better yet, a copy of the verification that PenFed purportedly sent to Equifax, which PenFed claims exonerates it from any liability. But Buccolo's muddled deposition testimony alone is not enough to demonstrate the absence of a genuine dispute of material fact. Accordingly, PenFed is not entitled to summary judgment on Plaintiffs' claim that it negligently violated § 1681s-2(b).

**B.  PLAINTIFFS' DAMAGES**

PenFed argues that, even if Plaintiffs could establish PenFed's liability, Plaintiffs have no evidence of damages to support their claims. Plaintiffs claim that, as a result of PenFed's violation of the FCRA, they suffered: (1) emotional distress, (2) lost credit opportunities, and (3) damage to their credit worthiness. I will address these claims in turn.

### 1. *There Is No Evidence of Emotional Distress Damages*

Plaintiffs claim emotional distress damages. PenFed argues that Plaintiffs should not be able to recover any damages for emotional distress because: (1) "Plaintiffs did not present any evidence of emotional distress beyond their own self-serving testimony"; (2) "Plaintiffs admit their alleged emotional distress did not manifest in physical harm or symptoms, and they admit they did not seek any healthcare treatment"; and (3) "Plaintiffs did not designate any experts to provide medical or psychological testimony supporting their claims." Dkt. 30 at 19. Plaintiffs' only retort to these arguments is that "Ida Farris articulated that she talked with her doctor regarding some depression she was feeling." Dkt. 31 at 6. Plaintiffs do not address PenFed's assertion that Plaintiffs' emotional distress, if

7

any, "did not manifest in physical harm or symptoms," and that Plaintiffs "did not seek any healthcare treatment." Dkt. 30 at 19. Thus, I consider it "undisputed for purposes of [PenFed's] motion" that Plaintiffs have not suffered any physical harm or symptoms from their alleged emotional distress, nor have they sought medical treatment. Fed. R. Civ. P. 56(e)(2) (permits the court to treat a fact as undisputed when a party fails to properly address another party's assertion of fact).

To recover emotional damages under the FCRA, "[a] plaintiff must provide actual 'evidence of a genuine injury,' which may include, 'the observations of others,' 'corroborating testimony,' or 'medical or psychological evidence.'" *Cameron*, 713 F. App'x at 241 (quoting *Cousin*, 246 F.3d at 371). Plaintiffs have not offered anyone's observations but their own. Plaintiffs have not offered corroborating testimony, or medical or psychological evidence. Plaintiffs' "uncorroborated testimony lacks specificity and fails to show the nature and extent of the actual emotional harm." *Bacharach v. Suntrust Mortg., Inc.*, 827 F.3d 432, 436 (5th Cir. 2016). Accordingly, PenFed is entitled to summary judgment on Plaintiffs' claims for emotional distress damages.

### 2. *There Is Some Evidence of Actual Damages*

Plaintiffs also claim that they have incurred actual damages in the form of lost credit opportunities and damage to their creditworthiness. To prevail on these claims, Plaintiffs must "present evidence sufficient to raise a material fact question on the issue of whether the denial of . . . loans [or loss of creditworthiness] was proximately caused by [PenFed]'s alleged misreporting" of the Account. *Id.* at 435. For the most part, PenFed has demonstrated that the duplicate reporting was not the proximate cause of Plaintiffs' poor creditworthiness and lost credit opportunities, and Plaintiffs have done nothing to create a genuine dispute of material fact as to the lack of causation. There is one lost credit opportunity, however, for which PenFed cannot show a lack of causation. Before reaching that issue though, I will discuss why most of Plaintiffs' damages claims fail for a lack of causation.

Plaintiffs claim they were denied credit opportunities from Bankers Healthcare Group, LLC ("BHG"), 1st Franklin Financial Corp. ("1st Franklin"), and Randolph-Brooks Federal Credit Union ("RBFCU") because of PenFed's alleged duplication of the Account. As to BHG and 1st Franklin, PenFed has offered conclusive proof that duplicate reporting of the Account was not the reason these entities denied credit to Plaintiffs. For BHG, PenFed offers an April 21, 2023 denial letter showing that BHG relied only on a consumer credit report from TransUnion. *See* Dkt. 30-14 at 2. It is undisputed that TransUnion did not report the Account multiple times. Because BHG relied only on a TransUnion report, duplicate reporting cannot have been the cause of BHG's denial. *See Cousin*, 246 F.3d at 370 (holding that judgment against the defendant, TransUnion, was improper where the evidence showed that the credit grantor "denied [the plaintiff]'s application based on an internal credit report and a report from Equifax, not Trans Union"). As for 1st Franklin, PenFed offers the declaration of Alma Solis, the Branch Manager who "made the decision not to grant Ms. Farris and Mr. Williams' request for a loan in July 2023." Dkt. 30-13 at 3. Solis declares that "the fact that the PenFed account appears more than once would not change my decision to deny the loan request." *Id.* Accordingly, Plaintiffs cannot prove that duplicate reporting of the Account caused the BHG or 1st Franklin credit denials.

There is another, simpler reason, however, that Plaintiffs cannot recover damages for the BHG and 1st Franklin credit denials. PenFed cannot legally be held responsible for damages arising from credit denials that occurred *prior* to Plaintiffs initiating a dispute. "While a furnisher of information may have liability for violations of 1681s–2(b), it is clear that any liability for alleged violation of 1681s–2(b) does not arise until a consumer reporting agency reports an inaccuracy to the furnisher and the furnisher fails to correct the error." *Davis v. Sallie Mae, Inc.*, No. 3:09-cv-00821, 2009 WL 2525303, at *3 (N.D. Tex. Aug. 18, 2009). Plaintiffs did not initiate a dispute until August 2023. But the BHG denial letter was issued on April 21, 2023, and Solis denied Plaintiffs application in July 2023—

*before* Plaintiffs disputed the duplicate reporting of the Account. Thus, even if Plaintiffs could establish causation as to the BHG and 1st Franklin credit denials, PenFed cannot be held liable for those denials because both were issued *before* August 2023, when Plaintiffs first disputed the duplicate reporting of the Account.

The RBFCU credit denial, however, is a different story. RBFCU denied credit to Plaintiffs in September 2023, *after* Plaintiffs had initiated a dispute. Moreover, as to Plaintiffs' Equifax credit reports, the "NUMBER OF ACCOUNTS WITH DELINQUENCY" was listed as a key factor that adversely affected Plaintiffs' credit scores, suggesting that the duplicate reporting of the Account could have been a factor in the denial. Dkt. 30-12 at 5, 8. Because I must construe the evidence and draw all reasonable inferences in Plaintiffs' favor, this evidence creates a genuine dispute of material fact as to whether the duplicate reporting caused Plaintiffs to lose this credit opportunity with RBFCU. This evidence also creates a genuine dispute of material fact as to whether the duplicate reporting caused Farris's credit score to drop by one point and Williams's credit score to drop by three points. *See* Dkt. 30 at 8 ("Farris'[s] credit care was 604 when the [Account] was listed once, and the score was reduced by just one point to 603 when the [Account] was listed more than once."); *id.* at 9 ("Williams'[s] credit score was 559 when the [Account] was listed once, and the score was reduced by just three points to 556 when the [Account] was listed more than once.").

PenFed argues that "unrebutted evidence proves . . . [Plaintiffs] were categorized as credit risks both before and after those nominal reductions [in their credit scores]; and their credit files contained multiple other derogatory accounts." Dkt. 30 at 20. PenFed is free to make that argument to the jury, whose job it is to allocate damages. That is not something the court can do at this stage. But it is worth clarifying that, even if Plaintiffs can establish PenFed's liability as to a negligent violation of § 1681s-2(b) at trial, the only damages Plaintiffs may seek are their actual damages from the RBFCU credit denial and the single-digit decrease to their respective credit scores.

## CONCLUSION

For the reasons discussed above, I recommend that PenFed's Motion for Summary Judgment (Dkt. 30) be granted as to (1) Plaintiffs' claim that PenFed willfully violated § 1681s-2(b); (2) Plaintiffs' emotional distress damages; and (3) Plaintiffs' claim for damages arising from the 1st Franklin and BHG credit denials. I recommend that PenFeds's Motion for Summary Judgment be denied as to (1) Plaintiffs' claim that PenFed negligently violated § 1681s-2(b); and (2) Plaintiffs' claim for actual damages arising from their loss of creditworthiness and the RBFCU credit denial.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 14th day of May 2025.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE